TULSA COUNTY DISTRICT COURT
STATE OF OKLAHOMA



| | |
|---|---|
| CARISSA NEALIS, | ) |
| Plaintiff, | ) |
| v. | ) Case No. CJ-2015-04431 |
| COXCOM, LLC, a foreign limited liability company, a/k/a COX COMMUNICATIONS and CCI-OKLAHOMA, | ) JURY TRIAL DEMANDED<br>) ATTORNEY LIEN CLAIMED |
| Defendant. | ) |

DISTRICT COURT
F I L E D
DEC - 3 2015
SALLY HOWE SMITH, COURT CLERK
STATE OF OKLA. TULSA COUNTY

DAMAN CANTRELL

## PETITION

Plaintiff Carissa Nealis ("Nealis" or "Plaintiff"), by and through her attorney of record, Christopher L. Camp, hereby brings the above-styled action against Defendant CoxCom, LLC ("Cox" or "Defendant") for its violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

### PARTIES, JURISDICTION & VENUE

1. This action arises under certain provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII").

2. Plaintiff Carissa Nealis is a resident of the City of Broken Arrow, Tulsa County, State of Oklahoma.

3. At all times material to the present action, Nealis was an "employee" of Defendant, as defined by 42 U.S.C. § 2000e(f).

4. At all times material to the present action, Plaintiff was a member of a class of persons protected by Title VII, to wit: persons who have opposed a discriminatory

1

practice and/or who have assisted or participated in any manner in an investigation or proceeding under Subchapter VI of Chapter 21 of Title 42 of the United States Code, as defined in 42 U.S.C. § 2000e-3(a).

5. During her employment with Defendant, Plaintiff has also belonged to additional classes of persons protected from unlawful employment practices on the basis of sex, as prohibited by 42 U.S.C. §§ 2000e-2(a) and 2000e(k), to wit: female and pregnant female.

6. Defendant CoxCom, LLC is a foreign limited liability company that was formed in the State of Delaware, is authorized to do business in Oklahoma, and that does a substantial amount of business in the City of Tulsa, Tulsa County, State of Oklahoma.

7. Defendant, or some component division or enterprise thereof, has referred to itself in Oklahoma by, and/or has operated in Oklahoma using, variants on its name as officially registered with the Oklahoma Secretary of State, including, without limitation, "Cox Communications," "Cox Communications, Inc.," and "CCI-Oklahoma."

8. Defendant is an "employer" pursuant to 42 U.S.C. § 2000e(b).

9. Plaintiff timely filed Charge of Discrimination No. 846-2014-09554 with the United States Equal Employment Opportunity Commission ("EEOC"), wherein she complained that Defendants unlawfully retaliated against her in violation of 42 U.S.C. § 2000e-3(a) and/or unlawfully discriminated against her on the basis of her sex, as prohibited by 42 U.S.C. § 2000e-2(a)(1).

10. Plaintiff filed this action within ninety (90) days after receiving her *Dismissal and Notice of Rights* from the EEOC on September 8, 2015.

11. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to the holding in *Yellow Freight System, Inc. v. Donnelly*, 494 U.S. 820, 110 S.Ct. 1566 (1990), which recognized that state courts have concurrent jurisdiction with federal courts over civil actions brought under Title VII.

12. The venue of this action properly lies in Tulsa County District Court pursuant to OKLA. STAT. tit. 12 §§ 133 and 137.

## FACTS

13. On or about August 7, 2007, Plaintiff was hired by Defendant as an Account Executive.

14. At the time of her termination from Cox, Plaintiff was an Account Executive for Mid-Market Retention and Sales.

15. In that position, a substantial portion of Plaintiff's income was earned on a commission basis

16. In approximately June 2011, Plaintiff became pregnant.

17. Starting a few days prior to, or contemporaneous with, the birth of Plaintiff's baby on March 1, 2012, Plaintiff took maternity leave that lasted approximately six weeks. Plaintiff returned to work in approximately mid-April 2012.

18. One of Plaintiff's co-workers during her employment with Defendant was Mark Palzer ("Palzer"), who worked in one or more positions, including the position of Customer Service Representative, until his termination on or about June 10, 2013.

19. In approximately June 2012, Cox Business sales team had a meeting in Oklahoma City at the Devon Boathouse and chartered a bus for the trip. Palzer was sitting behind Plaintiff on the bus at the time it was preparing to depart from Tulsa.

20. As the bus was about to leave the parking lot, Palzer's immediate supervisor, Shelley Stauffer ("Stauffer"), who was riding in a separate van, called Palzer's phone and began yelling at Palzer very loudly and in an extremely demeaning manner.

21. As the bus on which Plaintiff was riding was pulling out of the parking lot, Plaintiff observed Stauffer's van racing up from behind. After the bus pulled out onto 51st Street heading west towards Highway 169, Stauffer's van overtook the bus and sharply maneuvered directly in front it before coming to a complete stop. Stauffer jumped out of the van, approached the bus, and began banging on its door and yelling at Palzer to get off the bus.

22. Plaintiff immediately sent a text message to her manager, Tom McPherson ("McPherson"), told him what him what happened, and urged him to help Palzer.

23. When the group arrived in Oklahoma City, Plaintiff asked McPherson if he had told Director Tim Jenney ("Jenney") about the incident, he said he had and he would handle it but that it was a busy day for Jenney so McPherson would address it later.

24. The following day, Plaintiff attempted to share her concerns with Defendant's human resources department and get help for Palzer. Specifically, Plaintiff met with Melissa Mason ("Mason") in Mason's office, along with Jenney, who was also present, to explain incident that had occurred the previous day, to express her

4

concerns about the hostile and discriminatory treatment that Palzer had been suffering through in working with Stauffer (which Palzer had previously told Plaintiff about and which Plaintiff now felt she had witnessed first hand), and to let Mason know that she felt Stauffer's acts were so discriminatory, harassing, and hostile that they were now affecting not only Palzer and those on Stauffer's team, but other employees as well, including Plaintiff.

25. Mason and Jenney both indicated that they understood Plaintiff's concerns, were aware of them, and that they would take care of the situation, following which Plaintiff's meeting with Mason and Jenney ended.

26. To the best of Plaintiff's knowledge, after the meeting, no follow up was conducted by Mason, Jenney, or any other member of Defendant's management regarding Plaintiff's complaint to Defendnat regarding what she reasonably and in good faith believed constituted unlawful employment discrimination and harassment.

27. Prior to Palzer being terminated at the age fifty-one, Stauffer had been overheard saying that Defendant employed too many older white men in her department and that she wanted to fill her team with younger, black men.

28. Based upon things she had been told or had observed firsthand, Plaintiff believed that Palzer was being subjected to disparate treatment on the basis of his age and/or his race.

29. In the months following her initial complaint in June 2012, Plaintiff made other complaints to management about what she reasonably and in good faith believed constituted unlawful employment discrimination against Palzer.

30. Following Plaintiff's initial complaint in June 2012, and continuing through the termination of Plaintiff's employment in December 2013, Defendant began being treating Plaintiff less favorably than her co-workers who had not spoken out against the discriminatory treatment of Palzer.

31. By way of a letter from attorney Jeff Nix to Heather Romeike dated December 20, 2012, Defendant was notified that Palzer had initiated a charge of discrimination with the Equal Employment Opportunity Commission against Cox.

32. Additionally, and upon information and belief, in December 2012, Defendant also received a copy of EEOC paperwork prepared on Palzer's behalf, which identified Plaintiff as a witness to the discriminatory incidents about which Palzer was complaining.

33. Within days of learning of that Plaintiff had been listed as a witness on behalf of Palzer, Defendant made the unprecedented move of taking one of Plaintiff's largest accounts and reassigning it to a male co-worker.

34. Defendant has a standard governing its employees that expressly "requires us all to act as a team by complying with all laws, regulations and Company policies."

35. On March 2, 2002, Defendant enacted its "Corrective Action Policy," which was subsequently revised on January 1, 2008, and generally consisted of the following four steps: (1) Initial Counseling, (2) Written Warning, (3) Final Written Warning, and (4) Dismissal.

36. The express purpose and goal of Cox's "Corrective Action Policy" was "to turn around unsatisfactory job performance and/or unacceptable conduct with

progressive counseling and to preserve the employee's employment with the company."

37. Pursuant to Defendant's "Corrective Action Policy":

    F.    The corrective action described above may not be followed:

- When management is of the opinion that remedial efforts are unlikely to be successful;

- When the employee has engaged in misconduct which falls so far below the expectations of the company that employment should not be continued.

- When the employee refuses to commit to the outlined success steps or fails to demonstrate a good faith effort to improve performance or behavior.

    G.    Examples of conduct which may be cause for immediate discharge include but are not limited to the following:

- The sale, purchase, use or possession of alcohol, an illegal drug, or any other controlled substance by an employee on company premises or while conducting company business.

- Falsification of a company record or document – deliberate or willful falsification, omission or alternation.

- Violation of the Electronic Information Systems Policy.

- Verbally or physically harassing, coercing, intimidating or threatening a co-worker, supervisor, customer or potential customer.

- Insubordination, which is defined as willful failure of an employee to perform a task or comply with a directive, instruction or request by management.

- Possession of a firearm, explosive or other deadly weapon including the conversion or threatened conversion into a weapon of any tool or other object used in the workplace.

- Unethical or illegal conduct in the course of employment or off-duty conduct that results in a criminal charge or

      conviction that may affect the workplace or image of the company or other off-duty conduct that may negatively impact the workplace or image of the company.

- Reckless disregard or willful violation of any safety or security rule where such disregard or violation endangers the safety of any person or the property of the company, customer, potential customer or employee.

- Fighting, provoking or initiating a fight or the use of threatening, abusive, intimidating or coercive languae or gesture during work hours or while on company premises.

- Gross neglect of duties or job performance.

- Gambling during work hours while on company premises.

- Job abandonment.

- Obtaining other employment or working elsewhere during a leave of absence.

- Other serious misconduct or policy violation.

38. During Plaintiff's employment with Defendant, Defendant made available to its employees written policies addressing "Conflicts of Interest" in various situations, which Defendant defined as "includ[ing] any situation where personal interest (sic) interfere with CCI's interests, or where we take for ourselves, a benefit, opportunity or advantage that rightfully belongs to the Company."

39. Regarding outside employment and affiliations of Cox employees, Defendant's "Conflicts of Interests" policies provided, in pertinent part:

    We must fully disclose whether we are an officer, director, employee, consultant or in an advisory position of any business in competition with Cox.

- Approval must be granted in advance; and

- Must not create divided loyalties.

> We must fully disclose and take special care when an immediate Family member works for a vendor or potential vendor, a competitor or CCI.
>
> - We must remove ourselves from any business dealings including any decision making; and
>
> - We must follow Cox's standard hiring practices and Nepotism Policy when hiring a family member.

40. Defendant's "Conflicts of Interests" policies provide the following explanation "[a]s an aid in understanding situations that may create a conflict of interest" in terms of outside employment:

> Q. I moonlight with a side business that performs computer networking and repairs. Is this a conflict of interest.
>
> A. Maybe. You should disclose the circumstances to your manager and HR Manager. Employees have an obligation to devote their full time attention to their job duties. Additionally, Company facilities and proprietary information cannot be used.

41. On March 2, 2002, Defendant enacted its "Conflicts of Interest Disclosure Policy," which was subsequently revised on January 1, 2008.

42. Under Defendant's policy on conflicts of interest, a Cox employee "shouldn't engage in any activities or relationships incompatible with the impartial, objective and effective performance of [his or her] duties."

43. Under Defendant's "Conflicts of Interest Disclosure Policy," Defendant has organized Conflicts of Interest Committees ("COI Committees") that, according to Defendant, "provide a systematic and consistent review of COI Disclosure Forms."

44. Under Defendant's "Conflicts of Interest Disclosure Policy," in the event that an employee of Defendant files a Conflict of Interest Disclosure Form, a COI

9

Committee will review the same and issue a "Determination" that (a) no conflict exists, (b) a conflict exists, but specific arrangements determined by the COI Committee alter the circumstances so that the arrangement (as notified) will be permitted, or (c) a conflict exists and should not be permitted.

45. Thereafter, under Defendant's "Conflicts of Interest Disclosure Policy," "[t]he appropriate HR Manager then shares the results of the COI Disclosure Form Determination with [the employee] and [his or her] Department Head."

46. Under Defendant's "Conflicts of Interest Disclosure Policy," Defendant expressly acknowledges that even though a conflict exists, there are times when "specific arrangements can be made to change the circumstances to avoid any conflict."

47. On or about December 23, 2013, Defendant terminated Plaintiff's employment, purportedly pursuant to Defendant's "Conflicts of Interest" policy.

48. No grounds existed under Defendant's "Conflicts of Interest" policy that warranted Defendant's termination of Plaintiff's employment.

49. Likewise, no grounds existed that would warrant immediate termination under Defendant's "Corrective Action Policy."

### FIRST CAUSE OF ACTION:
### RETALIATORY DISCHARGE
### 42 U.S.C. § 2000e-3(a)

For her First Cause of Action, Plaintiff re-alleges and incorporates by reference all paragraphs above, and further states:

50. Plaintiff complained to Defendant about what she reasonably and in good faith believed constituted unlawful employment discrimination by Defendant against her co-worker, Mark Palzer.

51. Plaintiff was also listed as a witness by Palzer in bringing his Charge of Discrimination against Defendant.

52. As such, Plaintiff engaged in protected opposition and/or participated in a Title VII proceeding.

53. Subsequent to engaging in the aforementioned activities protected by 42 U.S.C. § 2000e-3(a), Plaintiff suffered an adverse employment action in that Defendant terminated Plaintiff's employment.

54. Defendant terminated Plaintiff's employment in retaliation for engaging in one or more activities protected by 42 U.S.C. § 2000e-3(a).

55. Plaintiff has suffered damages as a result of Defendant's acts and/or omissions, including, without limitation, lost wages and benefits (both past and future), inconvenience, and emotional distress.

56. The acts and/or omissions of Defendant were willful, wanton, malicious, and/or in total disregard for Plaintiff's rights, giving rise to punitive damages.

**WHEREFORE**, Plaintiff Carissa Nealis prays that this Court enter judgment in her favor and against Defendant CoxCom, LLC, on Plaintiff's First Cause of Action, and award Plaintiff actual and compensatory damages (including, without limitation, back pay, front pay, lost employment benefits, damages for inconvenience and emotional distress (as defined in OKLA. UNIF. JURY INSTR. 20.3), and all other pecuniary and non-economic losses that Plaintiff suffered by reason of Defendant's unlawful conduct), punitive damages, statutory interest, and the reimbursement by Defendant of the attorney fees and costs reasonably incurred by Plaintiff in prosecuting this action, along with an

award of all other damages and relief (whether legal, equitable, or both) to which Plaintiff may be entitled and/or that the Court deems just and proper.

**SECOND CAUSE OF ACTION:**
**RETALIATORY FAILURE TO PROMOTE**
**42 U.S.C. § 2000e-3(a)**

For her Second Cause of Action, Plaintiff re-alleges and incorporates by reference all paragraphs above, and further states:

57. During her employment with Defendant, Plaintiff was denied one or more promotional opportunities, including movement to the position of Strategic Accounts Specialist.

58. By virtue of speaking out against what she reasonably and in good faith believed constituted unlawful employment discrimination by Cox against Mark Palzer, Plaintiff was a member of a class of persons protected by Title VII, to wit: persons who have opposed a discriminatory practice and/or who have assisted or participated in any manner in an investigation or proceeding under Subchapter VI of Chapter 21 of Title 42 of the United States Code, as defined in 42 U.S.C. § 2000e-3(a).

59. Plaintiff was qualified for the position of Strategic Account Specialist at the time that she applied for the position in approximately January 2013.

60. Defendant did not promote Plaintiff to the position of Strategic Account Specialist.

61. In March 2013, Plaintiff learned that the position of Strategic Account Specialist had been filled by Stephanie Schultze, who was not a member of the class of persons protected by 42 U.S.C. § 2000e-3(a), and who, upon information and

belief, did not meet the minimum qualifications for the position according to the criteria set forth by Defendant on the job posting.

62. The circumstances enumerated immediately above give rise to an inference of unlawful retaliation in violation of 42 U.S.C. § 2000e-3(a).

63. Plaintiff has suffered damages as a result of Defendant's acts and/or omissions, including, without limitation, lost wages and benefits (both past and future), inconvenience, and emotional distress.

64. The acts and/or omissions of Defendant were willful, wanton, malicious, and/or in total disregard for Plaintiff's rights, giving rise to punitive damages.

**WHEREFORE**, Plaintiff Carissa Nealis prays that this Court enter judgment in her favor and against Defendant CoxCom, LLC, on Plaintiff's Second Cause of Action, and award Plaintiff actual and compensatory damages (including, without limitation, back pay, front pay, lost employment benefits, damages for inconvenience and emotional distress (as defined in OKLA. UNIF. JURY INSTR. 20.3), and all other pecuniary and non-economic losses that Plaintiff suffered by reason of Defendant's unlawful conduct), punitive damages, statutory interest, and the reimbursement by Defendant of the attorney fees and costs reasonably incurred by Plaintiff in prosecuting this action, along with an award of all other damages and relief (whether legal, equitable, or both) to which Plaintiff may be entitled and/or that the Court deems just and proper.

### THIRD CAUSE OF ACTION:
### UNLAWFUL DISCRIMINATION IN EMPLOYMENT ON THE BASIS OF SEX
### 42 U.S.C. § 2000e-2(a)

For her Third Cause of Action, Plaintiff re-alleges and incorporates by reference all paragraphs above and, additionally or in the alternative, would state the following upon information and belief:

65. At all times material to the present action, Plaintiff was a member of a class of persons protected from unlawful employment practices on the basis of sex, as prohibited by 42 U.S.C. §§ 2000e-2(a) and 2000e(k), to wit: female and pregnant female.

66. Plaintiff suffered an adverse employment action in that Defendant terminated Plaintiff's employment.

67. Prior to the termination of her employment, Plaintiff was doing satisfactory work.

68. Subsequent to Plaintiff's discharge, her position remained open and/or was filled by an individual outside the class(es) of protected persons to which Plaintiff belonged.

69. Defendant's acts and/or omissions give rise to an inference of unlawful employment discrimination in violation of 42 U.S.C. § 2000e-2(a).

70. Plaintiff has suffered damages as a result of Defendant's acts and/or omissions, including, without limitation, lost wages and benefits (both past and future), inconvenience, and emotional distress.

71. The acts and/or omissions of Defendant were willful, wanton, malicious, and/or in total disregard for Plaintiff's rights, giving rise to punitive damages.

**WHEREFORE**, Plaintiff Carissa Nealis prays that this Court, in addition to awarding Plaintiff the relief for which she has prayed in her First and Second Causes of Action, and/or as alternative thereto, enter judgment in her favor and against Defendant

CoxCom, LLC, on Plaintiff's Third Cause of Action, and award Plaintiff actual and compensatory damages (including, without limitation, back pay, front pay, lost employment benefits, damages for inconvenience and emotional distress (as defined in OKLA. UNIF. JURY INSTR. 20.3), and all other pecuniary and non-economic losses that Plaintiff suffered by reason of Defendant's unlawful conduct), punitive damages, statutory interest, and the reimbursement by Defendant of the attorney fees and costs reasonably incurred by Plaintiff in prosecuting this action, along with an award of all other damages and relief (whether legal, equitable, or both) to which Plaintiff may be entitled and/or that the Court deems just and proper.

**Respectfully submitted:**

**CAMP LAW FIRM**

By: *Christopher L. Camp*
Christopher L. Camp, OBA #18541
7122 South Sheridan Road, Suite #2-382
Tulsa, Oklahoma 74133
Telephone: (918) 200-4871
Facsimile: (918) 550-8337
E-mail: camplawfirm@gmail.com

**Attorney for Plaintiff Denise Burden**