UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

CARISSA NEALIS,                     )
                                    )
           Plaintiff,               )
                                    )
v.                                  )    Case No. 16-CV-0078-CVE-TLW
                                    )
COXCOM, LLC,                        )
                                    )
                                    )
           Defendant.               )

## OPINION AND ORDER

Now before the Court is defendant's motion for summary judgment (Dkt. # 94). Defendant asks the Court to grant summary judgment in its favor, arguing that plaintiff's retaliatory failure to promote claim is time barred, that plaintiff has failed to make a prima facie showing of retaliation or discrimination, and that plaintiff has failed to demonstrate pretext. Dkt. # 94, at 20-30. Plaintiff responds that she has established a prima facie case of retaliation, and that she has presented sufficient evidence of pretext. Dkt. # 112,[1] at 25-27. Defendant replies that plaintiff abandoned her

---

[1]   Plaintiff's response to defendant's summary judgment motion was due on March 10, 2017. Dkt. # 91. On that date, plaintiff filed a motion (Dkt. # 106) asking the Court for an additional business day, until March 13, 2017, to file her response. Defendant opposed the motion, arguing that it would not have enough time to prepare a reply if plaintiff's motion were granted. Dkt. # 107. The Court granted plaintiff's motion and extended the deadlines for both response and reply briefs by one business day. Dkt. # 109. On March 13, 2017 at 11:57 p.m., plaintiff's response (Dkt. # 111) was filed. Plaintiff's response violates nearly every aspect of Local Rule 7.2(c), which requires (1) briefs to be no longer than twenty-five pages without leave of the Court, (2) all print to be no smaller than twelve-pitch font, (3) all margins to be no smaller than one inch, and (4) all briefs longer than fifteen pages to include an indexed table of contents. LCvR 7.1(c). Plaintiff complied only with the rule on margins. Plaintiff's response is thirty pages, uses eleven-pitch font in the main text and ten-pitch font in the footnotes, and does not include an indexed table of contents. Additionally, plaintiff failed to attach any of the exhibits referenced in her response. On March 14, 2017, plaintiff

(continued...)

claims of retaliatory failure to promote and sex discrimination by failing to address in her response brief defendant's arguments for summary judgment on those claims. Dkt. # 127, at 1-2.

**I.**

In August 2007, defendant hired plaintiff, a white female, as a realtor sales representative to work in its Tulsa office. Dkt. # 94, at 8; Dkt. # 112, at 1. In 2008, plaintiff became an acquisition sales representative, and in February 2009 she became an account executive for defendant's retention team. Dkt. # 94, at 8; Dkt. # 112, at 1. While she worked as an account executive, plaintiff reported to sales manager Tom McPherson, who reported to director of sales Tim Jenney until

---

[1]   (...continued)
filed a second response titled "corrected response" (Dkt. # 112). Plaintiff's second response brief repeated the same violations of Local Rule 7.1(c), but added additional responses to defendant's undisputed material facts, including responses to facts 36-61, to which plaintiff did not respond at all in her original response brief. Compare Dkt. # 111, at 5-8, with Dkt. # 112, at 4-7. Plaintiff's second response also attached none of the exhibits referenced in the brief. On the morning of March 14, 2017, the Court advised plaintiff no exhibits had been filed with its brief. Dkt. # 114. Plaintiff finally filed her exhibits later that afternoon. Dkt. # 116.

Plaintiff's second response brief is not a corrected version of her original response; it is a completed version of her original response. Plaintiff's first response was filed as a placeholder three minutes before the deadline, and plaintiff's actual response was filed a day late. Plaintiff does not get to circumvent the deadline by filing a draft and then updating her response with a completed version when plaintiff's counsel has gotten around to finishing it. Moreover, "[a]ll material facts set forth in the statement of the material facts of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of material facts of the opposing party." LCvR 56.1(c). Plaintiff's original response did not controvert defendant's material facts 36-61. Therefore, the Court could strike plaintiff's untimely, second response and find defendant's materials facts 36-61 confessed for the purpose of summary judgment. However, because defendant's summary judgment motion should be granted regardless of which response the Court considers, see infra Part III, and defendant has not asked the Court to strike plaintiff's second response, see Dkt. # 127, at 1 n.1, the Court will treat plaintiff's second response (Dkt. # 112) as her response brief and will not strike the response for flagrant violations of Local Rule 7.1(c).

March 9, 2013, when Jenney resigned. Dkt. # 94, at 8; Dkt. # 112, at 1. After Jenney's resignation, McPherson reported to Jenney's replacement, Christopher Shipman. Dkt. # 94, at 8-9; Dkt. # 112, at 1.

In June 2012, the sales team took a business trip to Oklahoma City. Dkt. # 94-1, at 22. Defendant provided a charter bus from Tulsa for its employees. Id. at 130. Seated behind plaintiff on the bus was Mark Palzer, who was a member of the small business group, which was managed by Shelley Stauffer. Id. at 23, 130. While on the bus, plaintiff overheard a phone conversation between Stauffer and Palzer in which Stauffer was yelling at Palzer for riding on the bus instead of the separate van provided for the small business group. Id. at 130. The van pulled in front of the bus at a traffic light, and Stauffer got out of the van, pounded on the door of the bus, and ordered Palzer to get off the bus and into the van. Id. Palzer collected his belongings and moved to the van. Id. Plaintiff immediately sent McPherson a text message to tell him what happened and asking him to help Palzer. Id. at 131.

The next day, plaintiff went to the office of Melissa Cruts, a human resources business partner, to discuss the bus incident. Id. at 25. Jenney was already in Cruts's office when plaintiff arrived, and plaintiff reported to both of them what she had seen between Stauffer and Palzer the day before. Id. at 25, 124. Plaintiff told Cruts and Jenney that she was embarrassed for the company and that she believed Stauffer singled out Palzer for harsh treatment. Id. at 124. Plaintiff also reported that Stauffer told another member of the retention team at some point that, "We have enough white men in the group, we need to hire diversity." Id. at 30-31, 124. In December 2012, Palzer, a white male over forty years old, filed a complaint with the Equal Employment Opportunity Commission (EEOC) alleging that Stauffer, a white woman in her fifties, discriminated against him on the basis

3

of his race and age. Dkt. # 116-28. Palzer listed plaintiff as a witness to the bus incident and the diversity comment. Id. at 9.

In August 2012, defendant issued new corporate policies that stated all accounts funded by the Oklahoma Universal Services Fund (OUSF) must be handled by the designated account representative. Dkt. # 94-1, at 57, 132. Plaintiff had a large account at the time that used OUSF funds, and McPherson and Jenney told plaintiff that an exception to the new rule had been made so that she could continue to work on the account. Id. at 58, 132. In December 2012, McPherson and Jenney told plaintiff that "it had been handed down from corporate headquarters" that there would no longer be an exception to the new rule and the account would be handed over to Brent Sherl, a senior account executive. Id. at 132.

In December 2012, plaintiff applied for the position of strategic service manager. Dkt. # 94, at 10; Dkt. # 112, at 1. The position reported to Darren Holland, the director of operations for Oklahoma. Dkt. # 94, at 10; Dkt. # 112, at 1. A human resources employee determined that three of the four applicants were qualified for the position, and the three remaining applicants, including plaintiff, were interviewed by Holland and Jenney in early February 2013. Dkt. # 94, at 10; Dkt. # 112, at 1. On March 14, 2013, Holland hired Stephanie Schultze, a white female, for the position. Dkt. # 116-30, at 22.

On February 25, 2013, plaintiff submitted her resignation to McPherson to open her own transportation business. Dkt. # 94-1, at 46-47. The next day, plaintiff wrote an email to Randy Chandler, vice president of Cox Business, informing him of her resignation and asking to meet with him that week to talk about the strategic service manager position and her future at the company.

Id. at 139. After meeting with Chandler, during which he encouraged plaintiff to stay at the company, plaintiff decided to rescind her resignation. Id. at 52-55.

On June 10, 2013, defendant terminated Palzer. Dkt. # 94-2, at 2. Defendant's proffered reason for firing Palzer was "poor performance." Id. Plaintiff asserts that she made "additional complaints" to "management" about Stauffer's "discriminatory treatment of Palzer" after plaintiff's initial discussion with Jenney and Cruts in June 2012. Dkt. # 116-5, at 2. Plaintiff states that the last of these complaints was to McPherson in August 2013, two months after Palzer was fired. Id.

On October 4, 2013, defendant terminated Steven Fulps for violating its conflict of interest policy. Dkt. # 94, at 13-14; Dkt. # 112, at 1. Human resources business partner Erin Vierthaler conducted the conflict of interest investigation, during which she discovered that Fulps owned a company that provided services offered by defendant and that Fulps had used his position with defendant to solicit business for his personally-owned company. Dkt. # 116-3, at 12-17. During his interview with Vierthaler, Fulps "complained that there were other employees who ran their own businesses." Dkt. # 94-4, at 3. Fulps asserts that he did not specifically identify any employees who ran other businesses, Dkt. # 116-7, at 1, but Vierthaler asserts that Fulps named plaintiff, Dkt. # 94-4, at 3.

After Fulps was fired, McPherson, at Vierthaler's request, asked plaintiff to review defendant's conflict of interest policy to determine whether she needed to file a disclosure form. Dkt. # 94, at 16; Dkt. # 112, at 1, 5-6. Plaintiff completed a disclosure form stating that her domestic partner and two uncles owned "telcom-related" businesses used by some of defendant's customers. Dkt. # 94-1, at 86, 240. At the request of human resources manager Heather Romeike, Vierthaler conducted an investigation into Tulsa Telesolutions, the company managed by plaintiff's domestic

partner. Dkt. # 94-4, at 3. Vierthaler interviewed plaintiff in November 2013 about her potential conflict of interest. Dkt. # 94, at 17; Dkt. # 112, at 1. Based on her investigation, Vierthaler determined that plaintiff had been the owner/operator of Tulsa Telesolutions frm August 2011 to sometime in 2012, and that her partner ran the company after 2012. Dkt. # 94-4, at 43. Vierthaler also concluded that plaintiff financially benefitted from the business and that the company competed with defendant. Id.

In early December 2013, Vierthaler sent a summary of her investigation to vice president of human resources Becky Ordoyne. Id. at 5, 37. Ordoyne reviewed the summary and determined that a conflict of interest existed. Id. at 37. On December 16, 2013, Vierthaler sent an email to McPherson, Shipman, and Romeike attaching her investigation summary and recommending termination of plaintiff's employment. Id. at 6, 43. Vierthaler asserted that a conflict of interest existed because plaintiff had the ability to refer defendant's customers to outside vendors, including Tulsa Telesolutions, and she had access to defendant's current and potential customer lists, sales strategies, and network information. Id. at 43. Shipman, Chandler, McPherson, and Romeike approved of plaintiff's termination under the conflict of interest policy. Id. at 57-61. On December 20, 2013, defendant terminated plaintiff's employment. Id. at 7.

On December 3, 2015, plaintiff filed this suit in the Tulsa County District Court, State of Oklahoma. Dkt. # 2-3, at 1. Defendant removed the case to this Court. Dkt. # 2. Plaintiff alleges claims of retaliatory discharge, retaliatory failure to promote, and sex discrimination, all under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Title VII). Dkt. # 2-3, at 10-14. Defendant now moves for summary judgment, arguing that plaintiff has failed to produce evidence sufficient to support her claims. Dkt. # 94.

## II.

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Id. at 327 (quoting Fed. R. Civ. P. 1).

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law." Id. at 251-52. In its review, the Court

construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

A plaintiff may prove violation of Title VII either by direct evidence of discrimination or retaliation, or by following the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Khalik v. United Air Lines, 671 F.3d 1188 (10th Cir. 2012). The parties agree that plaintiff does not present direct evidence and her claims should be analyzed under McDonnell Douglas. See Dkt. # 94, at 23; Dkt. # 112, at 23. Under McDonnell Douglas, plaintiff must first establish a prima facie case of discrimination or retaliation. Crowe v. ADT Sec. Serv., Inc. 649 F.3d 1189, 1195 (10th Cir. 2011). Then, defendant must provide a legitimate, non-discriminatory or non-retaliatory reason for the adverse employment action. Id. Finally, plaintiff must show that the defendant's proffered rationale is pretextual. Id.

### A.

Defendant argues that it is entitled to summary judgment on plaintiff's retaliatory discharge claim because plaintiff has failed to state a prima facie case of retaliation and plaintiff has failed to show defendant's proffered, non-retaliatory reason for firing her was pretext. Dkt. # 94, at 23-26. To establish a prima facie case of retaliation, plaintiff must show: "(1) that [s]he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that the a causal connection existed between the protected activity and the materially adverse action." Tabor v. Hilti, Inc., 703 F.3d 1206, 1219 (10th Cir. 2013) (quoting Argo v. Blue Cross and Blue Shield of Kan., Inc., 452 F.3d 1193, 1202 (10th Cir. 2006)) (alteration in original). A "causal connection may be shown by 'evidence of

circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'" Conroy v. Vilsack, 707 F.3d 1163, 1181 (10th Cir. 2013) (quoting O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1252 (10th Cir. 2001)). "Where, however, 'very close temporal proximity between the protected activity and retaliatory conduct' is lacking, 'the plaintiff must offer additional evidence to establish causation.'" Id. (quoting O'Neal, 237 F.3d at 1252).

It is undisputed that plaintiff's termination is an adverse employment action. Plaintiff asserts that her complaints regarding Stauffer's treatment of Palzer constitute protected activity. Dkt. # 112, 24-25. However, even if plaintiff engaged in protected activity, she has failed to show a causal connection between her protected activity and her termination. Plaintiff's only argument supporting a causal connection is that approximately three months separates plaintiff's last complaint about Palzer in July or August 2013[2] and the initiation of the conflict of interest investigation by Vierthaler. Id. at 25, 26 n.10.

Plaintiff first complained about Stauffer in June 2012, and plaintiff asserts that defendant knew that she was listed as witness on Palzer's first EEOC complaint in December 2012. In March 2013, McPherson and Chandler, two of the people who eventually approved her termination, encouraged plaintiff not to resign from the company. Plaintiff states that she continued to complain to "management" after the June 2012 bus incident, but plaintiff fails to provide evidence of how

---

[2]    Plaintiff's affidavit asserts that this complaint occurred in August 2013. Dkt. # 116-5, at 2. Plaintiff's brief states the complaint occurred in early July 2013. Dkt. # 112, at 26 n.10. The discrepancy has no effect on the outcome of this decision because either way plaintiff's termination is not sufficiently close in time to her complaint to establish causation.

often she complained, to whom she complained, or what plaintiff was specifically complaining about.

Regardless, even if plaintiff had produced clear evidence that she had been consistently complaining about what she reasonably believed was Stauffer's discriminatory behavior, and ignoring the fact that two of the people who eventually had a hand in firing her encouraged her to stay at the company after they knew about her complaints, plaintiff has failed to establish a temporal connection between plaintiff's alleged protected activity in July or August 2013 and her termination. The Tenth Circuit has not established a precise temporal line to determine whether an adverse employment action is close enough to the protected activity to satisfy the prima facie causation requirement. See Conroy, 707 F.3d at 1181. However, the Tenth Circuit has repeatedly stated that "a three-month period, standing alone, is insufficient to establish causation." Id. (quoting Meiners v. Univ. of Kan., 359 F.3d 1222, 1231 (10th Cir. 2004)); see also Antonio v. Sygma Network, Inc., 458 F.3d 1177, 1182 (10th Cir. 2006); Wells v. Colo. Dep't of Transp., 325 F.3d 1205, 1217 (10th Cir. 2003); O'Neal, 237 F.3d at 1253; Anderson v. Coors Brewing Co., 181 F.3d 1171, 1179 (10th Cir. 1999); Richmond v. ONEOK, Inc., 120F.3d 205, 209 (10th Cir. 1997). Thus, plaintiff has failed to establish causation based on temporal proximity. Moreover, plaintiff has failed to offer any other evidence of a link between plaintiff's alleged protected activity and her termination. Thus, plaintiff has failed to establish a prima facie case of retaliation.[3]

---

[3] Plaintiff argues at great length about the legitimacy of plaintiff's termination under defendant's conflict of interest policy. She asserts, inter alia, that the investigation was not thorough, that defendant failed to follow its own policies, and that McPherson knew about Tulsa Telesolutions years before she was fired. See Dkt. # 112, at 26-27. Plaintiff's arguments and evidence go to pretext, the third step in the McDonnell Douglas framework. Plaintiff's arguments are irrelevant in light of her failure to proceed beyond step one. Even if defendant's proffered reason for firing plaintiff was pretext for another reason, without first establishing a prima facie case of retaliation, no reasonable trier of fact could assume
(continued...)

**B.**

Defendant argues that plaintiff has abandoned her claims of retaliatory failure to promote and sex discrimination by failing to address defendant's arguments for summary judgment regarding those claims in her response. Dkt. # 127, at 1-2. The Court need not address this argument because plaintiff's retaliatory failure to promote and sex discrimination claims fail for the same reason as her retaliatory discharge claim: plaintiff has failed to establish a prima facie case of retaliation or discrimination.

Plaintiff has failed to state a prima facie case of retaliatory failure to promote because she has offered no evidence of a causal connection between her alleged protected activities and defendant's failure to promote her to the position of strategic service manager. Defendant has presented undisputed evidence that Holland made the decision to hire Schultze for the position and that Holland did not know about plaintiff's complaints about Stauffer's treatment of Palzer when he made the promotion decision. See Dkt. # 116-30, at 22. Because it is undisputed that the decisionmaker had no knowledge of any protected activities, he could not have made his decision for retaliatory reasons. Thus, plaintiff has failed to state a prima facie case of retaliatory failure to promote.

Plaintiff has also failed to state a prima facie case of sex discrimination. To state a prima facie case of discrimination under Title VII, a plaintiff must allege: (1) that the victim belongs to a protected class; (2) that the victim suffered an adverse employment action; and (3) the challenged

---

3   (...continued)
    the true reason was retaliation. The gist of plaintiff's case seems to be that she was treated unfairly by defendant. That may be true, but this Court is the proper forum for cases of employment discrimination and retaliation, not any complaint of unfair treatment by an employer.

action took place under circumstances giving rise to an inference of discrimination. <u>EEOC v. PVNF, L.L.C.</u>, 287 F.3d 790, 800 (10th Cir. 2007). It is undisputed that plaintiff, a female, belongs to a protected class, and she suffered an adverse employment action when she was fired. However, plaintiff has presented no evidence that her termination had anything to do with sex discrimination. It is undisputed that Fulps, a male, was fired just before plaintiff for a similar violation of the conflict of interest policy. As plaintiff has not presented any evidence that her termination took place under circumstances giving rise to an inference of discrimination, she has failed to state a prima facie case of sex discrimination.

**IT IS THEREFORE ORDERED** that defendant's motion for summary judgment (Dkt. # 94) is **granted**.

**IT IS FURTHER ORDERED** that defendant's motion in limine (Dkt. # 92) and plaintiff's motion in limine (Dkt. # 93) are **moot**.

**DATED** this 22nd day of March, 2017.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE